# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### APRIL 2000 SESSION

## STATE OF TENNESSEE v. JOE W. STEWARD

**Direct Appeal from the Circuit Court for Lewis County**
**No. 6004   Cornelia A. Clark, Judge**

---

**No. M1999-01284-CCA-R3-CD - Filed August 18, 2000**

---

Because the defendant, Joe W. Steward, was lawfully stopped at a traffic enforcement roadblock, his conviction for driving under the influence, second offense, is affirmed. The issue reserved on appeal by the defendant does not warrant suppression of the evidence.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Gary M. Howell, Columbia, Tennessee, for the appellant, Joe W. Steward.

Paul G. Summers, Attorney General & Reporter, Marvin E. Clements, Jr., Assistant Attorney General, and Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Joe W. Steward, entered pleas of guilt to driving under the influence, second offense, and possession of a weapon with intent to go armed. The trial court imposed a sentence of ll months and 29 days with probation after the service of 45 days on the driving under the influence conviction. There was no sentence on the other offense but the weapon was forfeited. The defendant reserved for appeal the question of whether the stop and search were lawful. See Tenn. R. Crim. P. 37(b)(2)(i). Because the stop was conducted upon proper authority, with neutral limitations, and in accordance with the applicable guidelines, there was no constitutional violation. Thus, the judgment is affirmed.

On the evening of August 18, 1998, Sergeant Bill Ray and Trooper Michael McAllister conducted a traffic enforcement roadblock on U. S. 412 East in Lewis County. At approximately 8:00 P.M., Trooper McAllister attempted to stop the defendant, who was driving his vehicle in the direction of the roadblock. According to Trooper McAllister, the defendant initially slowed his

vehicle, but then accelerated past the trooper before finally stopping in the center of the roadway. The trooper detected the odor of alcohol emanating from the defendant. Upon questioning, the defendant acknowledged that he had consumed five beers. He had a cooler which contained nine more beers in the backseat of the vehicle. Trooper McAllister also found a .357 caliber pistol in the front seat. After administering field sobriety tests, Trooper McAllister placed the defendant under arrest. Because the troopers did not have DUI testing equipment at the scene, the defendant was transported to an ambulatory care center where blood was drawn for chemical testing. . After the defendant's arrest, the troopers terminated the roadblock. The estimated duration of the roadblock was from 7:44 P.M. to 8:00 P.M., a total of 16 minutes.

Sergeant Ray established the location, the timing, and the procedures of the roadblock. There was no written plan. He confirmed that portable DUI equipment was not at the scene. The troopers intended to stop every vehicle that was driven through the roadblock, if possible; however, several cars were able to pass through without being stopped during times that both troopers were occupied with motorists that had stopped their vehicles.

Trooper McAllister testified that the purpose of the roadblock was to check for driver's licenses, commercial vehicle registrations, equipment violations, widths, lengths, and farm equipment violations. He claimed authority for the roadblock under General Order 410 of the Department of Safety, which requires the presence of at least two officers in marked patrol cars. The order also requires the approval of a lieutenant or a sergeant and the activation of the equipment on the patrol cars. It was Trooper McAllister's testimony that the order required no pre-approved plan for a traffic enforcement roadblock. He stated that after the completion of such a roadblock, an activity form must be completed by the supervisor and signed by the district captain. McAllister testified that he had followed the established procedure and that Sergeant Ray, Lieutenant Dempsey Holder, and Captain W.C. Thompson had executed the requisite follow-up documentation.

Trooper McAllister acknowledged that a different procedure was mandated for a sobriety roadblock. He testified that this process, governed by General Order 410-1, must be pre-approved by a colonel five days prior to the roadblock. A minimum of six officers must be involved. The news media must be notified in advance as to the location and length of the roadblock. According to Trooper McAllister, the procedure requires "no less than three days' prior notice for a sobriety checkpoint."

The trial court ruled that while the roadblock in this case did not comply with the requirements of State v. Downey, 945 S.W.2d 102 (Tenn. 1997), compliance was not necessary because the roadblock at issue was for traffic enforcement rather than a sobriety checkpoint. The trial court relied upon a footnote in the Downey opinion which provided that the ruling did not apply to the constitutionality of General Order 410 or roadblocks for the purpose of checking driver's licenses:

> Portable DUI testing equipment was not brought to the scene, as would be expected if the checkpoint was designed primarily to detect

those offenders. No pretext has been shown. General Order 410 has been complied with . . . . This court therefore concludes that, on the facts presented here, the roadblock was properly established and conducted under General Order 410 rather than 410-1 or <u>Downey</u>. Therefore, defendant's stop was not unconstitutional and the evidence ultimately gathered as a result of that stop should not be suppressed.

In this appeal, the defendant complains that a roadblock for the purpose of determining the validity of driver's licenses is unconstitutional. He argues that the state's interest in checking driver's licenses is not sufficient to warrant a roadblock intrusion on individuals who have the right to be free from unreasonable searches and seizures. <u>See</u> <u>Brown v. Texas</u>, 443 U.S. 47 (1979); <u>Michigan v. Sitz</u>, 496 U.S. 444 (1990). The defendant submits that the factors determining the constitutionality of a roadblock are "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." 443 U.S. at 50-51. The defendant contends that whether the roadblock is a sobriety checkpoint or a traffic enforcement checkpoint, the intrusive effect upon the individual is the same. He cites the following answers by Trooper McAllister to the questions of the trial judge as supportive of his claims:

THE COURT: Trooper, why did Sergeant Ray, I suppose, decide to conduct one kind of roadblock instead of the other?

McALLISTER: Usually, all we hold is the traffic enforcement-type roadblock. The sobriety roadblocks, 410.1, requires a minimum of six officers and that the colonel pre-approve it five days prior to that.

THE COURT: So you just decided not to do that and you're going to do the other kind and catch the same people?

McALLISTER: I've been on the - for two years, all I've ever held is a traffic enforcement-type roadblock.

In <u>Downey</u>, our supreme court, citing the holding in <u>Brown</u> with approval, observed as follows:

A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. . . . To this end, the

Fourth Amendment requires that seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

945 S.W.2d at 107 (quoting Brown, 443 U.S. at 50-51).

Initially, this stop of the defendant was not based on an articulable and reasonable suspicion that he was involved in criminal activity. See Terry v. Ohio, 392 U.S. 1 (1968). Both the state and federal constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. I, § 7. Any police activity which involves a stop of an automobile qualifies as a seizure under both the state and federal constitutions. Delaware v. Prowse, 440 U.S. 648 (1979); State v. Westbrooks, 594 S.W.2d 741 (Tenn. 1979).

In cases similar to this, the United States Supreme Court has substituted a balancing test in place of the traditional probable cause or articulable and reasonable suspicion of criminal activity standards utilized to determine the reasonableness of police detentions. See Brown v. Texas, 443 U.S. 47 (1979); United States v. Martinez-Feurte, 428 U.S. 543 (1976); United States v. Brignoni-Ponce, 422 U.S. 873 (1975). In determining the validity of a detention in roadblock cases, courts must balance the public interest and the individual's right to be free from the arbitrary interference of law officers. Absent articulable suspicion or probable cause, the "'seizure [in roadblock cases] must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.'" State v. Matthew Manuel, No. 87-96-III, slip op. at 2 (Tenn. Crim. App., at Nashville, Nov. 23, 1988) (quoting Brown, 443 U.S. at 51). In Brown, the Supreme Court held that a routine driver's license checkpoint served a substantial state interest in regulating drivers on public roads and highways. Because there is also a substantial state interest in regulating the vehicles on public roads, a roadblock may be within constitutional guidelines if conducted under General Order No. 410.

In this instance, the trial court determined that the state had established that the roadblock was carried out in a neutral manner compliant with General Order 410. Nothing in the record suggests that the troopers established the roadblock to specifically detain the defendant or any other individual. A supervisory officer, Sergeant Ray, was present at the time of the stop. There was proper documentation of the procedure.

In State v. David Arthur McCarter, No. 03C01-9406-CR-00240 (Tenn. Crim. App., at Knoxville, Mar. 13, 1995), this court upheld the conviction for driving under the influence of a defendant who was stopped at a driver's license checkpoint. The authority was granted in compliance with General Order No. 410. Later, in State v. David Lynn Hagy, No. 03C01-9505-CR-00152 (Tenn. Crim. App., at Knoxville, Dec. 5, 1995), this court upheld a conviction for violation of a habitual traffic offender order as the result of a roadblock conducted pursuant to General Order 410. In each of those instances, this court acknowledged the significant interest of the state in

regulating the operators of vehicles on public roads. Also, there was proof of compliance with General Order 410. Because the state has a legitimate interest in traffic enforcement and the roadblock plan contained explicit, neutral limitations on the conduct of the officers, the stop in this instance did not violate constitutional protections.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE